Case: 1:18-cv-01199 Document #: 2-1 Filed: 02/15/18 Page 1 of 38 PageID #:16

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CASE NO:** |
| v. | ) | |
| | ) | **Presiding Judge:** |
| | ) | **Magistrate Judge:** |
| | ) | |
| **JESSICA JIAHUI LEE**, an individual | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

NOW COMES plaintiff, JOHN DOE, by and through his attorneys, SMITHAMUNDSEN LLC, and for his Complaint at Law against defendant, JESSICA JIAHUI LEE, he asserts the following:

### INTRODUCTION

1.      The plaintiff brings this lawsuit against defendant, Jessica Jiahui Lee (hereinafter, "defendant" or "Lee"), under various state law theories of recovery including: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), **Tortious Interference with Business Expectancy** (Count IV), **Vandalism/Damage to Property** (Count V), **Intentional** (Count VI) and **Negligent Infliction of Emotional Distress** (Count VII).

2.      The offending conduct began in September of 2017 after a seven-month dating relationship between the parties soured. Plaintiff was unwilling to reconcile after coming to terms with Lee's misrepresentation of her age, polarizing mental instability, and following his discovery she had been abusing illicit drugs, using fake identification and several aliases, and she had been exploiting men across the country for sport and personal financial gain.

**EXHIBIT "A"**

Case: 1:18-cv-01199 Document #: 2-1 Filed: 02/15/18 Page 2 of 38 PageID #:47

3.      Lee often played the victim. Plaintiff became tasked with helping Lee better herself and repair fractured relationships she had with family and friends. Lee became dependent upon the plaintiff for the emotional and financial support he provided during their relationship. Plaintiff's decision to end the relationship and cease further contact with Lee led to more rampant drug use and triggered a desire to retaliate against plaintiff for what she perceived as him abandoning her. Lee tried incessantly to convince plaintiff to take her back, but when he pleaded with her to move on, Lee cautioned that he would regret his decision.

4.      Lee's anger escalated to unreasonable proportions. She used the expansive reach of the Internet, traveled across state lines, and even solicited and conspired with others to disrupt and compromise plaintiff's reputation, livelihood and emotional well-being.

5.      Soon thereafter, Lee connected with Doe's friends, family, work colleagues and clients using imposter social media profiles. She also registered him for male-seeking-male dating sites and other online services so that he would be bombarded with calls, texts and inappropriate advances. Lee even solicited Craigslist visitors and her over 30,000 Instagram followers to stalk, harass and retaliate against plaintiff for conduct Lee completely fabricated. Defendant's lies were given widespread publicity and made Doe look like a sexual predator, a serial abuser and apathetic/unethical in his business practices.

6.      In doing so, Lee invaded plaintiff's personal and professional circles and caused him undue ridicule and humiliation. Plaintiff was compelled to refocus his energy on damage control. He was vigilant in trying to remove those fake profiles he could find, searching for others, and rehabilitating his character amongst friends and business associates. Navigating the wreckage created by Lee became overwhelming and unmanageable. When one imposter profile was removed, another popped up almost instantly.

7.     Plaintiff initiated proceedings in Illinois and Texas in the hopes they would deter Lee from further attack.  He sought an emergency order of protection in Illinois, which was granted, but gave him little relief.  Lee continues to harass plaintiff with late night messages and calls from untraceable phone numbers.  Recent to the filing of this lawsuit, Lee traveled to Chicago and manipulated her way inside a secure residential building to vandalized plaintiff's car using glue (for the locks), spray paint (to adorn the panels with swastikas) and an unknown sharp item (to puncture three of his tires and scratch the body).

## PARTIES

8.     John Doe is a citizen of Illinois with a principal residence within the boundaries of the City of Chicago, County of Cook, State of Illinois.  Doe is a technology professional with over twenty (20) years of consulting, project management and solutions architecture experience.  At all relevant times, and presently, plaintiff is employed as a Senior Director at a NASDAQ-traded, publicly-held consulting firm.

9.     Jessica Jiahui Lee was born on November 6, 1998, and she is a citizen of Texas with a principal residence at 4213 Mildenhall Drive in Plano, Texas 75093-3147.  At times, Lee is believed to reside with one of her co-conspirators at 2600 Waterview Parkway, Unit 4127 in Richardson, Texas 75080-1433.  She also appears to reside at 1250 State Street, Unit #5419 in Richardson, Texas 75082-2055.

10.     It is believed that Lee travels frequently with various male "sponsors" whom she manipulates into paying for expensive gifts and travel -- sometimes in exchange for sexual favors.  It is also believed that Lee is employed as an exotic dancer in Las Vegas, Houston, Austin and Dallas, and that she uses false identification to avoid tax consequences and to conceal that she is under the age of twenty-one (21).  The defendant does not reside or work in Illinois.

11.     At all relevant times, Lee used multiple aliases, fleeting telephone numbers and created imposter e-mail addresses and social media platforms to harass, stalk, bully, denigrate, defame and intimidate the plaintiff in his home state, and amongst those in his network who are predominantly residents of this state.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C § 1332(a) where there is complete diversity between Doe (Illinois) and Lee (Texas), and where the matter in controversy exceeds a damage value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

13.     This Court has personal jurisdiction over Jessica Jiahui Lee, and venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b)(2), where Lee targeted the plaintiff in his domicile state of Illinois, and where the principal harm to plaintiff's reputation occurred within this judicial district. As to plaintiff's claim of vandalism/property damage, Lee is alleged to have traveled across state lines to this district to trespass onto plaintiff's residential property to commit a hate crime together with an act of vandalism.

## ALLEGATIONS COMMON TO ALL COUNTS

14.     Beginning in or around early February of 2017, the plaintiff met Jessica Jiahui Lee while traveling to Las Vegas, Nevada for business.

15.     The two embarked on a casual dating relationship for approximately seven (7) months beginning in March of 2017 and ending in September of that same year. The two often traveled together, including to Chicago, and defendant took plaintiff to her home in Texas to meet her parents.

16.     The defendant's mental instability was not nearly as apparent during the course of their seven-month relationship as it was following their break-up.  Though plaintiff had his suspicions during their relationship, defendant was able to conceal her addictive personality and

manipulate plaintiff's compassionate sensibilities so he would rescue her from a supposed abusive past and parents displeased with her life choices.

17.     Conversely, plaintiff was embroiled in divorce proceedings following a 10-year marriage. Plaintiff was in an emotionally vulnerable state and found solace in Lee to whom he confided his own personal and work-related challenges.

18.     Over time, the plaintiff became suspicious of Lee whose story was not quite adding up.  He discovered Lee had considerably misrepresented her age (she stated she was 25 but was only 19), and she lied about her profession (she stated she was employed by Boston Consulting Group but was actually an exotic dancer and professional "sugar baby").

19.     As the truth began to surface, defendant reacted by playing up her role as a victim of childhood abuse, and she divulged she had been institutionalized for past drug abuse and suicidal tendencies.  Lee garnered sympathy from plaintiff who offered emotional and financial support and filled the void as her protector not knowing what the future held.

20.     On or about September 30, 2017, at a point where the defendant reached a height of instability, the plaintiff felt the relationship was toxic and he decided it was best for the two to part ways.  Lee became irrational, volatile and threatening.

21.     Further digging revealed that plaintiff had not been her only suitor, and that Lee was engaged in multiple, for-profit relationships wherein she offered sexual favors in exchange for expensive jewelry, apparel and travel to luxury resorts and spas throughout the world.

22.     Defendant's dependency on heroin intensified, as did the expense of maintaining her habit.  Lee began contacting plaintiff at all hours of the day and night demanding that plaintiff provide her financial support "or there would be consequences."  Plaintiff made it clear that Lee was not to contact him again.

23.     Upon learning of their daughter's misdeeds, it is believed that defendant's parents kicked her out of their home in or about October of 2017.

24.     Upon information and belief, defendant Lee typically resides in the Dallas, Texas area, and she is known to have lived with one of her co-conspirators in Richardson, Texas.

25.     The defendant enlisted the help of others to barrage plaintiff with phone calls and texts demanding financial support, which he flatly refused.  The more often plaintiff rejected or ignored Lee's demands, the more pervasive her threats were toward him.

26.     Beginning in early October of 2017, defendant Lee would call or send text messages to plaintiff at all hours of the evening.  Many of those messages would contain lengthy rants concerning her grave financial situation.  Lee blamed plaintiff for her likely suicide or need to resort to prostitution after his heartless decision to abandon her.

27.     The plaintiff tried to ignore Lee's phone calls, texts and demands for money, which persisted into mid October 2017.  Having made no progress, the defendant altered her strategy and began detailing false accusations of verbal and physical abuse by plaintiff against Lee during their time together. Lee paired those allegations with made-up instances of rape, and she threatened to let everyone know just what kind of person he was.

28.     To wit, in a text message from Lee to the plaintiff on or about October 15, 2017, Lee stated in relevant part:

> **You're the same guy who ducking [sic] raped me and is cheating on your wife.**
>
> **I'll make sure everyone knows. And I'll take care of my own car insurance, groceries and treatments.  But I'll make sure everyone you know and everyone in your whole friend group knows what kind of person you really are.**
>
> **You can go fuck yourself.  You are nothing but a piece of shit same as every other guy. I wouldn't have done all those things if I were you….**

29.     Lee followed through with her threats by contacting plaintiff's estranged wife using an imposter Facebook profile.  Lee exploited the private information plaintiff confided in her while they were dating, and she relayed false accusations of rape and abuse so that plaintiff's soon-to-be-ex would have leverage in their division of marital assets.

30.     By sharing these private, incendiary and mostly false facts about plaintiff, Lee knew or should have known, they would receive widespread publicity amongst plaintiff's and his ex-wife's common contacts and others.

31.     Plaintiff's ex-wife was taken aback, horrified and fearful for her safety, as was the plaintiff who never expected Lee to go to such lengths to hurt him.   It was not long before plaintiff's ex-wife initiated a complaint against Lee with the San Francisco Police Department and terminated her social media accounts because of Lee's behavior.

32.     Shortly thereafter, but also in mid-to-late October of 2017, Lee sent plaintiff a text message forewarning him of her plans to retaliate further:

> **…you ruined your own life [John Doe]. I gave you fair warning what would happen if you disrespected me and threw me away.**

33.     The defendant began posting on her Instagram account, @lifeinplastixx, that she was the victim of rape and abuse in a recent relationship. On or about October 16, 2017, the defendant posted the following knowingly false and injurious rant to her over 30,000 followers:

> **Hey followers!  Just want to make a quick announcement to every girl (and guy) that follows me.  For the past couple of months I was in an abusive relationship and NOBODY knew about it.  The people that were close to me could always see that something was bothering me and that I would cry constantly but nobody knew what was truly wrong…**
>
> **For example, the second date I ever went on with this guy, I explicitly told him that sex was out of the question and simply not on the table (because he was married at the time but "going through a divorce") and also because I wanted genuine respect before committing sexually to a guy I barely knew. Yet, after telling him all of this and all the trauma I'd already went through with other guys, he selfishly took my body that night.**

> Afterwards, I began crying and instead of getting comforted, he became angry with me…
>
> But there were always other times he would blow up at me and call me a whore because I had slept with him. Gradually as time went on, the relationship became more verbally abusive…
>
> I became extremely isolated and depressed, refusing to get out of bed because every day was torture and the only time I looked forward to was going to sleep because that was my only escape….
>
> Abuse doesn't always look like bruises and cuts. Abusive doesn't have to be choke marks and and (sic) broken bones. Abuse can be behind closed doors. It can be name calling, belittling, it can be your partner telling you they are ashamed to be with you...

34. The defendant (or someone at her insistence) then created a fictitious Instagram account for the sole purpose of identifying Doe by name in the comments section of her post. By alerting thousands of her followers that plaintiff was the abuser caused plaintiff to genuinely fear for his own safety.

35. It is also believed that Lee (or someone at her insistence) created a fake account on Instagram under the pseudonym "Kirkonanbz123." The user then repeatedly identified the plaintiff using his Instagram handle with corresponding accusations that he is a "**rapist**," and that he "**needs to stop raping women**." Plaintiff's fear that defendant's disciples would retaliate against him or his family worsened.

36. Lee's "followers" did in fact circulate the post, and some even retaliated against plaintiff directly with threats of physical violence or by spamming his account. The plaintiff took exhaustive efforts to have the fake Instagram profile removed, but to no avail.

37. On or about October 19, 2017, it is believed that Lee (or someone acting at her insistence) created another imposter Instagram account using an abbreviation of plaintiff's name in the handle to convince others it was authentic. Lee then reached out to and connected with plaintiff's friends, family members and work colleagues -- many of whom "followed" the imposter profile back.

38. Lee then posted private, naked photos of the plaintiff on the account's feed, including some depicting him undressed and exposing his genitalia. These photos were unknowingly taken during an intimate FaceTime session while the two were dating. In fact, the plaintiff had not learned of the existence of these photos until she used them to harass and humiliate him. Lee knew, or should have known, that public dissemination of these very private photos would be hurtful, embarrassing and otherwise subject plaintiff to ridicule and isolation.

39. This and other posts on Lee's social media account were evidence of her aptitude for manipulation, and her ability to fabricate events as if they were historically accurate. Lee intended to destroy Doe's reputation and compromise his safety. Lee was falsely portrayed as the perpetrator of verbal, physical and sexual abuse on the seemingly innocent and frail defendant.

40. Defendant's course of conduct was consistent with documented threats where Lee gave him "fair warning" of what would happen if he "disrespected [her] and threw [her] away." She made it clear, in writing, that she would "make sure everyone [he] knows and everyone in [his] friend group knows what kind of person [he] really [is]."

41. To add credibility to her tale, Lee (or someone at Lee's insistence) engineered fake exchanges on Snapchat to give the impression that she and the plaintiff were having real-life conversations. In one exchange, it appears as if the "plaintiff" confesses to assaulting Lee as well as other instances of abuse.

42. Screenshots of this exchange -- and others like it -- were widely disseminated through Lee's Instagram story, on Snapchat and through other avenues to portray plaintiff in a false light as a self-admitted misogynist, rapist and serial abuser.

43. Not long thereafter, in mid-to-late October of 2017, the plaintiff started receiving phone calls from unrecognized numbers, as well as a barrage of text messages containing pictures of male genitalia and propositions to engage in homosexual trysts.

44.     After further investigation, it was determined that defendant Lee created fake dating profiles on Tinder and Ok-Cupid (and possibly other sites), using plaintiff's likeness, real name, his cell phone number and other personal information. Lee identified plaintiff as "a male seeking other males," and it is believed she solicited risqué photos as a precursor to any in-person encounter. The plaintiff received countless text messages and phone calls over the course of several months, at all hours of the day and night, as a result of these phony dating profiles.

45.     At virtually the same time he began receiving these messages, Lee posted the following photo of herself on her @lifeinplastixx Instagram feed with the comment "**I don't get angry. I get even**" with hashtags, **#illruinyourlife**, "**#becareful**, and **#dontmakemad**:



46.     Lee's cyber bullying efforts persisted without provocation. The defendant created a Craigslist account on or about October 22, 2017, near the University of Texas at Dallas. She then posted a solicitation using anonymous user information. The fake solicitation was titled, "**FIND**

**THE MAN WHO RAPED MY 9 YEAR OLD DAUGHTER**" and was accompanied by a **$1,000 reward**. The entirety of the post follows:

> **This 45 year old man raped my 9 year old daughter. He groomed her through Instagram and then met up with her at the park to rape her! All I have of him is his Instagram account which is [omitted]. If anyone can find out who he is and where he stays I am offering a reward. I want JUSTICE for my daughter!!! His phone number is [omitted].**

47. The plaintiff included with the post plaintiff's actual cell phone number and Instagram handle (omitted in the reprinted version above). It is relatively simple to determine other identifying information about plaintiff by entering the mobile number provided in the Craigslist ad into Google's search engine.

48. It was reasonably foreseeable that the content of this fake Craigslist ad, put out to hundreds if not thousands of Internet users, would be believed and might naturally incite visitors to seek retribution against plaintiff for these despicable acts.

49. In fact, on one occasion, a Craigslist visitor misinterpreted the plaintiff's cell phone number as the phone number of the person making the accusation. Plaintiff received the following text:

> **Hi I saw your listing on Craigslist. First of all I want to say I am so sorry that happened to your little girl. I want to help find this guy for you. I think I know how I can help.**

50. Lee's attack of plaintiff continued. On or about October 22nd and October 23rd of 2017, the plaintiff received two LifeLock alerts concerning an inquiry into his credit information by Capital One Bank.

51. Upon information and reasonable belief, defendant Lee attempted to apply for a loan or credit card using plaintiff's name and personal information. A subsequent letter from Capital One confirmed that "someone" attempted to obtain a credit card on false pretenses.

52.    Defendant's cyber-bullying campaign persisted.  On October 24, 2017, the plaintiff continued to receive harassing text messages and threats that were no doubt authored and sent by defendant Lee using an application that disguises one's phone number.

53.     On or about October 24, 2017, plaintiff received an inquiry from an unknown number asking if he wanted to buy "dick pics." The plaintiff learned that the person texting him was simply responding to a Craigslist ad that Lee likely created, and which included plaintiff's personal cell phone number.

54.    Also on October 24th, plaintiff received a text from defendant with a photograph of a male penis pasted near the mouth of a picture of plaintiff's face.

55.    On October 25, 2017, and several instances thereafter, plaintiff received a text message from an unknown number asking if he wanted to buy pictures of male genitalia. It was determined that the solicitation was made in response to a Craigslist post likely authored by Lee (or by someone at her insistence).

56.    On or about October 26, 2017, defendant created an imposter LinkedIn profile using plaintiff's name along with a picture of plaintiff's face and a penis.  This was the same photo texted to plaintiff by the defendant on October 24th.

57.    Knowing that LinkedIn was the most common site for professionals seeking to connect with one another, Lee initiated contact with several of plaintiff's customers, co-workers and superiors.  Plaintiff's proper title, employer, office location, experience, education and interests were accurate so as to mislead members of plaintiff's professional network into believing the profile was legitimate.

58.    Plaintiff was vigilant and the fake LinkedIn profile was reported and removed. It was not long before a new profile was created and additional clients and contacts were solicited by defendant using a new fictional account.

59. Toward the end of October of 2017, plaintiff began working with law enforcement and he initiated a petition for an emergency order of protection in Illinois, which was granted on October 26th and to be enforced if Lee violated its terms.

60. Notwithstanding, on October 27, 2017, defendant registered plaintiff for a service where he would receive automated phone calls through an application known as "Snoozester." Snoozester is an application that allows its user to schedule a barrage of phone calls to his personal cell phone with certain reminders or to assist the user to wake up.

61. On November 4, 2017, or thereabouts, the defendant created yet another fake LinkedIn profile using pictures of the plaintiff's face intermixed with pictures of male genitalia. Plaintiff used this opportunity to connect with plaintiff's superiors and other senior management personnel at plaintiff's consulting firm to further humiliate and embarrass him.

62. Beneath plaintiff's name it identified plaintiff's employer and stated as follows:

**I hate working for [employer omitted]!! I also hate my clients!!!! I am also very drunk.**

The profile goes on to identify specific clients by name, accuse him of infidelity, and it included a personal note to a professional colleague disparaging her capabilities.

63. The new, imposter LinkedIn profile also included the following rant, drafted by defendant to convince readers that plaintiff had written it in a drunken stupor:

**Hi, I am very drunk right now and I just wanted to let you know that I hate my job very much and I have contacted you to let you know how much I hate my job. I really regret working for this company and I actually know this company is going downhill. Also, I wanted to let you guys know (before you guys pay out all the bonuses) that you guys can save ALL THE BONUSES AND INCENTIVES YOU GUYS WERE GOING TO GIVE ME because I have already contacted all my clients [client names omitted] to tell them how much I hate having them as clients and don't appreciate their business. I honestly hate my job at [employer omitted] and deeply regret accepting my job at [employer omitted] and I totally regret selling my own company, [company omitted], to you guys. Working for myself at [company omitted] was way better than working at this shit company [employer omitted], because 1. Nobody**

has ever heard of [employer omitted] and 2. Every one knows [another consulting firm omitted] is way better anyways. I sent you this letter to let everyone at [employer omitted] know that you can suck my penis (insert picture). And wow, I have really fucked myself over here but I don't really care because I am soooo drunk right now (meme of me fucking my self). Don't worry about telling any of my clients I will no longer be serving them because I have already sent all my contacts at [client's names omitted] a picture of my penis so know how much I hate them and how much everyone at [employer omitted] hates them as well. Fuck [employer omitted], I hate you guys for moving me to his shithole of an office in Chicago. (I am a senior director and I don't even have my own office in Chicago why? I'm literally the biggest moneymaker you guys have in Chicago and I'm obviously top dog and the rest of you are just jealous). Also, I no longer need my end of the year bonuses because I've decided to get a divorce and retire!!!! So glad that I can take a breather from working for your shitty company!! Adios losers!!!!!! Thanks for the memories drunk [plaintiff's name omitted].

64.     It was not long before the plaintiff was called into the offices of his superiors and the Human Resources Department to address what was going on. Defendant succeeded to embarrass, humiliate and compromise the personal and professional reputation of plaintiff. Lee's repeated attacks also took a toll on plaintiff's health and well-being.

65.     Lee's ongoing pursuits were relentless and unprovoked. On or about November 13, 2017, defendant sent plaintiff an invoice for five hundred dollars ($500.00) using the Square application. The description on the request for payment was "**for raping me.**" This is the same account to which plaintiff loaned defendant money to help with rent and car expenses while the two were dating.

66.     After refusing payment, on or about November 18, 2017, the defendant created yet another fake Instagram account impersonating the plaintiff and attempting to connect with members of his personal and professional network.

67.     In doing so, defendant used several photographs of the plaintiff's face paired with cropped photos of male genitalia. Defendant used this profile to "follow" over five hundred (500) of

plaintiff's contacts hoping to solicit return followers and destroy plaintiff's good name. Beneath plaintiff's name, defendant wrote in the profile:

> **I am rapist and cheater!!!! Also, I work for [employer omitted]. Proud cheater for the last 25 years of my life. See my cock here!!!!" [Link provided to imposter LinkedIn profile created by defendant].**

68.     The defendant was meticulous in her use of various hashtags to boost publicity and loop in countless others known to plaintiff's employer and customer base.

69.     Additional photos were displayed on the imposter Instagram feed including personal, naked photographs depicting the plaintiff, which Lee took without his knowledge or consent while the two were dating.   Plaintiff had a reasonable expectation that those pictures would not be taken surreptitiously or given the publicity she gave them. At the time this initial fake Instagram account was created, it had 61 followers and was following 1,631 others on the Internet.

70.     On November 18, 2017, plaintiff discovered that the defendant had created two Facebook profiles impersonating the plaintiff and using his name and likeness for their profiles.  It is not known when these Facebook profiles were created because the defendant blocked the plaintiff to conceal her misdeeds. The defendant used these profiles to contact several people in the plaintiff's network -- including his ex-wife -- to harass, intimidate and defame plaintiff and otherwise place him in a false light amongst his peers and colleagues.

71.     Lee's tirade continued with professions of love for the plaintiff and claims that she never intended to hurt him.  Defendant offered the assurance she would never contact plaintiff again, that she would leave him "**alone for good**," and she called for a "**truce**."

72.     Lee stated further, she would "**never do another thing to try and 'get back' at [Plaintiff]…you have my word that I will never do a single thing more to try and harm you or your reputation…I love you too much to keep trying to hurt you.  I am done trying to cause you pain for something that wasn't your fault…**"

73.     On or about November 28, 2017, plaintiff received yet another text message from Lee making excuses, suggesting she was "**hacked**," attributing her behavior to "**blackouts and memory losses**" and apologizing for any "**pain or heartache**" she caused him following their break-up.  Lee's purported regret for her actions did not last long.

74.     In the early morning hours of November 30, 2017, defendant Lee texted plaintiff from an unrecognized number insisting that he withdraw his Petition for Order of Protection and begging him for mercy.  She goes on to say:

> **We live literally states apart.  We'll never see each other again.  So please just drop it and save yourself some money and time.**
>
> **I'm truly sorry for every embarrassment I've caused you.  It was all my fault, everything was my fault, I'll take the blame, all I want is for you to drop this.**

The three-page text concluded with the following,

> **I'm truly sorry for everything I've done and can only hope that this sincere note can soften the hatred in your heart against me.**

75.     Later that same morning, the plaintiff was informed by his building's management office that his car had been vandalized.

76.     Despite the assurances from Lee above, and posts on her Instagram feed that she was traveling with her new boyfriend in Key West, Florida, defendant was captured on video footage on November 29, 2017, entering plaintiff's secure building behind an unsuspecting resident.

77.     Lee entered the elevator with the same unsuspecting resident who helped her get to the garage where plaintiff's car was typically parked.  Lee then punctured three of his four tires, used a sharp item to scratch all four quarter panels of the vehicle, inserted super glue into the locks and spray-painted swastikas in black on several panels of his car.



78.     Doe retained legal counsel, and on December 8, 2017, the undersigned attorney sent a formal notice to defendant. The letter indicated that plaintiff had retained a law firm to pursue recourse for her criminal, tortious and compensable behavior. The letter went on to describe the various criminal statutes defendant presumably violated, as well as the role the firm would play in pursuing a federal action under various theories of civil liability.

79.     Notice of the impending suit was coupled with various directives including:

**(a)     That Lee refrain from making or publishing any future defamatory or disparaging remarks concerning the plaintiff;**

**(b)     That Lee take the necessary steps to retract and/or remove any social media profiles, communications or posts authored by defendant (or at her direction), under any alias, concerning the plaintiff, his immediate family members, clients, customers, work colleagues or superiors;**

**(c)     That Lee draft and sign a formal retraction and/or apology confessing to her actions and explaining the reason for her behavior, which plaintiff may distribute to those members of his personal and professional circles to mitigate the harm already caused; and**

**(d)     That Lee promptly confer with an attorney and her insurers to propose a financial settlement to compensate plaintiff for any presumed damage to his reputation, and as restitution for any financial losses sustained as a result of (and during the term of) her malicious crusade.**

80.     Having received the letter, Lee left a voicemail at plaintiff's counsel's office to discuss "a personal matter." Several return calls were attempted, but Lee never returned the call or left any

substantive voicemail with additional contact information or proposing a response to the above-stated demands.

81.     On December 10, 2017, plaintiff received additional text messages and eleven (11) phone calls from an untraceable number believed to be Lee. Plaintiff did not respond. At 11:43 p.m. that evening, defendant texted,

**Check your god damn car pussy Weienstien**
**WAKE UP AND CHECK YOUR INFINITI**

82.     On December 22, 2017, plaintiff received six (6) telephone calls from two different untraceable numbers in a ten-minute span. When plaintiff ignored the calls, Lee disguised herself using the name "Ana" and suggested the two had "met a while back."

83.     On January 20, 2018, plaintiff received another phone call from an untraceable number and one photo sent via text. The photo depicted Lee and another man, both completely naked on a bed and in the midst of sexual intercourse. The accompanying text message read, **"[John Doe], I love to pleasure you and make you happy**." It was sent at approximately 8:36 p.m. (CST)

84.     In late January of 2018, Lee created another imposter LinkedIn profile using plaintiff's name and it included accurate background facts about him. It was discovered by plaintiff and removed after being flagged.

85.     At 5:50 a.m. on February 1, 2018, Lee contacted plaintiff yet again by text message using an untraceable number.

86.     Notwithstanding entry of an emergency order of protection, service of a formal cease and desist letter, and the involvement of law enforcement in Illinois and Texas, Lee continues to harass, intimidate and otherwise spread false rumors about plaintiff via social media and various other avenues, some still unknown.

87. The plaintiff harbors a reasonable fear for his own personal safety, and the safety of those around him, in light of Lee's escalating, unpredictable, and unexplainably vindictive behavior following a mere seven month dating relationship that simply did not work out.

88. Upon information and reasonable belief, the defendant uses fake identification and a variety of aliases including, Tiffany Kim, Whitney Pearson, Jilian Kay, Kimmee, Anders, Shay and Ily to evade law enforcement and to attack others using the Internet in a manner consistent with -- but by no means as pervasive as -- her attack on plaintiff's character.

89. It is believed that defendant solicited others to assist in her cyber bullying campaign, though they have not been included in this iteration of the lawsuit and may be added later. These co-conspirators have received formal cease and desist letters as notice of their involvement as material witnesses and/or future parties to this litigation.

## COUNT I
## DEFAMATION PER SE

90. Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 90.

91. Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to destroy plaintiff by spreading countless rumors, lies and other falsities to members of plaintiff's social and professional circles, as well as to people on the Internet who plaintiff does not know.

92. In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following illicit acts in furtherance of her scheme to defame plaintiff and destroy his reputation:

(a) Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

(b)     Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

(c)     Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

(d)     Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

(e)     Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

(f)     Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

(g)     Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

(h)     Exploited plaintiff's personal information and credit history in attempts to secure financing; and

(i)     Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

93.     Lee knowingly lied, manipulated facts, and distorted reality when she made accusations of verbal, physical and sexual abuse against the plaintiff in various forums, including, but not limited to, Facebook, Craigslist, Instagram, Snapchat, LinkedIn and in other electronic communications and in-person gossip mongering.

94.     Most concerning was defendant's creation of a fake Craigslist posting soliciting visitors to exact revenge on plaintiff for raping a non-existent nine (9) year-old girl after grooming her through a personal Instagram account.

95.     Reasonably understood, defendant's statements amount to an accusation of serious and reprehensible criminal conduct, as well as the implication that he was guilty of infidelity, notwithstanding the pending divorce from his then wife. Lee's conduct also imputed to plaintiff a want of integrity and a lack of competency in his employment.

96.     Lee was so intent on destroying plaintiff's good name and reputation that she took painstaking efforts to make the false accusations sound credible to those hearing them, even those close to plaintiff who had no reason to believe the defendant or doubt the plaintiff.

97.     Lee's social media posts were crafted in such a way to inspire belief and sympathy on the part of those recipients of the false information; defendant knew or should have expected that, upon reviewing these defamatory posts, others would retaliate against plaintiff directly, or those who knew him might otherwise distance themselves and proceed with caution.

98.     There is no physical or other tangible evidence to substantiate claims that the plaintiff physically or sexually abused the defendant, or anyone for that matter.

99.     These statements were knowingly false and/or stated with reckless disregard for the veracity of the accusations and the foreseeable, devastating harm they would cause on plaintiff's reputation.

100.    The defendant has been relentless in her efforts to discredit and destroy the reputation of plaintiff, and she continues to publish defamatory statements consistent with those stated herein, as well as some that are inherently hidden and undiscoverable by plaintiff and his counsel.  Their investigation continues.

101.    The plaintiff has no way of knowing who believed some or all of the false statements made by defendant about plaintiff, nor can he truly assess the identity, scope and sheer number of people who were impacted by Lee's falsehoods to the detriment of plaintiff.  In fact, the plaintiff has been unable to determine how many media platforms Lee exploited to publicize the offending statements.

102.    The defendant published these false accusations to various persons connected to the plaintiff's personal and professional networks, as well as people unknown to the plaintiff who were subscribers and/or followers of the defendant's social media pages or visitors to Craigslist.

103.     The defendant knew, or with substantial certainty should have known, that these accusations would be re-published by others and widely disseminated in the community where plaintiff lived and worked, as well as throughout the United States and beyond.

104.     This false publicity invaded plaintiff's personal and professional circles, caused undue ridicule and will continue to have a demonstrable, adverse impact on plaintiff's livelihood, physical and emotional well-being.

105.     The defendant's publication of these false accusations severely impaired the plaintiff's personal and professional reputation, in the community where he lived and worked, and beyond, and resulted in severe emotional distress, humiliation, embarrassment and mental suffering.  The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensable damages, as well as exemplary damages in the amount of One Million Dollars ($1,000,000), for her willful and contumacious disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on plaintiff's reputation as a respected and upstanding member of his community.  Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

## COUNT II
## <u>FALSE LIGHT INVASION OF PRIVACY</u>

106.     Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 106.

107.     Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to destroy plaintiff by spreading countless rumors, lies and other falsities to members of plaintiff's social and professional circles, as well as people on the Internet who plaintiff does not know.

108.     In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following illicit acts in furtherance of her scheme to place plaintiff in a false light and destroy his reputation:

(a)     Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

(b)     Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

(c)     Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

(d)     Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

(e)     Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

(f)     Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

(g)     Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

(h)     Exploited plaintiff's personal information and credit history in attempts to secure financing; and

(i)     Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

109.     Lee knowingly lied, manipulated facts, and distorted reality when she made accusations of verbal, physical and sexual abuse against the plaintiff in various forums, including, but

not limited to, Facebook, Craigslist, Instagram, Snapchat, LinkedIn and in other electronic communications and in-person gossip mongering.

110.    Most concerning, was defendant's creation of a fake Craigslist posting soliciting visitors to exact revenge on plaintiff for raping a non-existent nine (9) year-old girl after grooming her through a personal Instagram account.

111.    Reasonably understood, defendant's statements amount to an accusation of serious and reprehensible criminal conduct, as well as the implication that he was guilty of infidelity, notwithstanding the pending divorce from his then wife. Lee's conduct also imputed to plaintiff a want of integrity and a lack of competency in his employment.

112.    These false allegations unreasonably placed the plaintiff in a false light before the public by attributing reprehensible criminal acts to the plaintiff that he did not commit, and imputing to him a want of integrity and a lack of competency in his capacity as an experienced senior consultant.

113.    The defendant's actions were committed with actual malice, and would be highly offensive to a reasonable person because they portrayed plaintiff, an upstanding member of society, as an individual who would verbally, physically and sexually abuse women and exploit a minor child with criminal intentions.

114.    In addition to those false statements publicized by defendant, the plaintiff solicited others to engage in fake text exchanges to make it appear that plaintiff was heartless, abusive and a perpetrator of sexual assault.  Defendant took screenshots and reposted these fictional conversations with the intent of placing plaintiff in a false light, and to substantiate the knowingly false accusations lodged against him.

115.    If that were not enough, defendant falsified professional biographies, using Doe's name and likeness, and included language she authored as if it had come from the mouth of plaintiff

himself. The intent of doing so was to convince plaintiff's customers, colleagues and superiors that he lacked the integrity and competency to carry out his job responsibilities or appear deserving of his compensation or bonuses. These actions were also committed with actual malice and would be considered extreme and outrageous to a reasonable person.

116.    Lee's conduct was so methodical and pervasive that no person in plaintiff's shoes would be expected to endure it without suffering severely from the consequence of her actions.

117.    The defendant has been relentless in her efforts to discredit and destroy the reputation of plaintiff, and she continues to publish defamatory statements consistent with those stated herein, as well as some that are inherently hidden and undiscoverable by plaintiff and his counsel. Their investigation continues.

118.    The plaintiff has no way of knowing who was persuaded by the false light defendant put plaintiff in, nor can he truly assess the identify, scope and sheer number of people who were impacted by Lee's falsehoods to the detriment of plaintiff.

119.    The defendant published these false accusations to various persons connected to the plaintiff's personal and professional networks, as well as people unknown to the plaintiff who were subscribers and/or followers of the defendant's social media pages. In fact, the plaintiff has been unable to determine how many media platforms Lee exploited to broadcast plaintiff in this false light.

120.    The defendant knew, or with substantial certainty should have known, that these accusations would be re-published by others and widely disseminated in the community where plaintiff lived and worked, as well as throughout the United States and beyond.

121.    This false publicity invaded plaintiff's personal and professional circles, caused undue ridicule and will continue to have a demonstrable, adverse impact on plaintiff's livelihood, physical and emotional well-being.

122.     The defendant's publication of these false accusations severely impaired the plaintiff's personal and professional reputation, in the community where he lived and worked, and beyond, and resulted in severe emotional distress, humiliation, embarrassment and mental suffering.  The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensable damages, as well as exemplary damages in the amount of One Million Dollars ($1,000,000), for her willful and contumacious disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on plaintiff's reputation as a respected and upstanding member of his community.  Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

### COUNT III
### PUBLIC DISCLOSURE OF PRIVATE FACTS

123.     Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 123.

124.     Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to destroy plaintiff by publicizing private, embarrassing photographs and other information to members of plaintiff's social and professional circles, as well as people on the Internet who plaintiff does not know.

125.     Some of the offending photographs depict plaintiff naked or involve close-ups of his genitalia. The photos appear to have been taken surreptitiously while the parties were involved in a mutual, intimate, dating relationship.  Plaintiff had no knowledge that the photos had been taken or

maintained. Plaintiff had a reasonable expectation that private moments between the two would remain private and would not be given widespread publicity even after the two decided to part ways.

126.    The private information shared could not reasonably be construed as newsworthy or necessary to the discourse of some legitimate public concern.

127.    Lee posed for and shared similar, private photographs with plaintiff depicting her in various states of undress and in compromising positions. She, too, has a reasonable expectation of privacy, which plaintiff has and will continue to respect.

128.    In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following illicit acts in furtherance of her scheme to publicize private, embarrassing photographs and other information to destroy plaintiff's reputation:

(a)    Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

(b)    Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

(c)    Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

(d)    Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

(e)    Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

(f)    Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

(g)    Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

(h)    Exploited plaintiff's personal information and credit history in attempts to secure financing; and

(i)     Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

129.     Defendant's conduct was highly outrageous, and so methodical and pervasive, that no person in plaintiff's shoes would be expected to endure it without suffering severely from the consequence of her actions.

130.     The defendant has been relentless in her efforts to humiliate and destroy plaintiff, and upon information and reasonable belief, she continues to disseminate embarrassing, sexually explicit photographs depicting plaintiff without his consent. Some of defendant's efforts are inherently hidden and undiscoverable by plaintiff and his counsel, which are subject to their ongoing investigation.

131.     The plaintiff has no way of knowing who saw the private photographs, nor can he truly assess the identity, scope and sheer number of people who received this private, humiliating unsolicited information.

132.     The defendant published these private, embarrassing photographs, and other private information, to various persons connected to the plaintiff's personal and professional networks, as well as people unknown to the plaintiff who were subscribers and/or followers of the defendant's social media pages.

133.     The defendant knew, or with substantial certainty should have known, that these private, embarrassing photographs would be re-published by others and widely disseminated in the community where plaintiff lived and worked, as well as throughout the United States and beyond.

134.     Lee's efforts to publicly humiliate plaintiff founds its way into plaintiff's personal and professional circles, caused undue ridicule and will continue to have a demonstrable, adverse impact on plaintiff's livelihood, physical and emotional well-being.

135.     The defendant's widespread publication of these private, embarrassing photographs, and related private information, severely impaired the plaintiff's personal and professional

relationships, and it resulted in severe emotional distress, humiliation, embarrassment and mental suffering. The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensatory damages, as well as exemplary damages in the amount of One Million Dollars ($1,000,000), for her willful and contumacious disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on plaintiff's reputation as a respected and upstanding member of his community. Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

136.     Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 136.

137.     Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to destroy plaintiff by spreading countless rumors, lies and other falsities to members of plaintiff's social and professional circles.

138.     In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following illicit acts in furtherance of her scheme to interfere with plaintiff's existing and prospective business relationships, and to ultimately destroy his professional reputation:

(a)     Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

Case: 1:18-cv-01193 Document #: 21 Filed: 02/15/18 Page 30 of 38 PageID #:305

    (b)    Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

    (c)    Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

    (d)    Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

    (e)    Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

    (f)    Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

    (g)    Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

    (h)    Exploited plaintiff's personal information and credit history in attempts to secure financing; and

    (i)    Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

139.    Lee knowingly lied, manipulated facts, and distorted reality when she made accusations of verbal, physical and sexual abuse against the plaintiff in various forums, including, but not limited to, Facebook, Craigslist, Instagram, Snapchat, LinkedIn and in other electronic communications and in-person gossip mongering. This false publicity was directed, at least in part, to plaintiff's customers, co-workers and superiors.

140.    These false allegations unreasonably placed the plaintiff in a false light before his professional colleagues by attributing reprehensible criminal acts to the plaintiff that he did not commit, and imputing to him a want of integrity and a lack of competency in his capacity as a senior consultant.

141.    Lee falsified professional biographies and included language she authored as if it had come from the mouth of plaintiff himself. The intent of doing so was to convince plaintiff's

customers, colleagues and superiors that he lacked the integrity and competency to carry out his job responsibilities or appear deserving of his compensation or bonuses.

142. The defendant knew, or with substantial certainty should have known, that these false accusations would be re-published by others and widely disseminated in the community where plaintiff lived and worked, as well as throughout the United States.

143. The defendant knew that the plaintiff was involved in an economically beneficial relationship through his employer and several customers such that the probability of future financial benefit to the plaintiff was likely.

144. The conduct alleged herein was fabricated in a manner that would appear credible to plaintiff's customers, colleagues and superiors and was widely distributed to plaintiff's professional network with the intention of disrupting any existing or prospective business relationships.

145. The defendant's conduct did in fact cause disruption of plaintiff's existing and prospective business relationships.

146. Defendant's conduct was so extreme, outrageous, methodical and pervasive that no person in plaintiff's shoes would be expected to endure it without suffering severely from the consequence of her actions.

147. The defendant has been relentless in her efforts to discredit and destroy the plaintiff's professional reputation, and she continues to publish false statements to interfere with his professional relationships. Some of Lee's efforts are inherently hidden and undiscoverable by plaintiff and his counsel. Their investigation continues.

148. This false publicity invaded plaintiff's personal and professional circles, caused undue ridicule and will continue to have a demonstrable, adverse impact on plaintiff's livelihood and emotional well-being.

149.     The defendant's conduct severely impaired the plaintiff's business relationships, and resulted in great emotional distress, humiliation, embarrassment and mental suffering.  The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensable damages, as well as exemplary damages in the amount of One Million Dollars ($1,000,000), for her willful and contumacious disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on plaintiff's reputation as a respected and upstanding member of his community.  Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

## COUNT V
## VANDALISM/DAMAGE TO PROPERTY

150.     Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 150.

151.     Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to harass and intimidate plaintiff, and in doing so, deliberately trespassed into plaintiff's secure residential building with the intention of vandalizing plaintiff's car.

152.     On November 30, 2017, the plaintiff was notified by his building management office regarding damage to his car while it was parked in his private parking space in the garage attached to his building.  Defendant was captured on video footage entering plaintiff's secure building behind an unsuspecting resident on November 29, 2017.

153.    Lee entered the elevator with the same unsuspecting resident who helped her get to the garage where plaintiff's car was typically parked.  Lee then punctured three of his four tires, used a sharp item to scratch all four quarter panels of the vehicle, inserted super glue into the locks and spray-painted swastikas in black on several body panels.

154.    Plaintiff received text messages from an untraceable number on or about December 10, 2017, as well as an attempted eleven phone calls from those same numbers of which plaintiff did not answer.  At 11:43 p.m. that evening, defendant texted, "**Check your god damn car pussy Weienstien. WAKE UP AND CHECK YOUR INFINITI**."

155.    Lee's decision to travel across state lines to Chicago after creating an alibi that she was in Florida, to then enter plaintiff's secure building behind an unsuspecting resident, and then vandalize plaintiff's car in hate-crime fashion, evidences an escalation of her behavior and the drastic need for court and law enforcement intervention.

156.    The plaintiff harbors a reasonable fear for his own personal and physical safety, and the safety of those around him, given the defendant's unpredictable, volatile, and unexplainably vindictive behavior following a mere seven month dating relationship that simply did not work out.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, to reimburse plaintiff for the costs associated with repairing his vehicle, its diminished value, damages associated with loss of use while the vehicle was being repaired, and any other relief this Court deems appropriate and just under the circumstances.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

157.    Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 157.

158.     Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a deliberate campaign to destroy plaintiff by spreading countless rumors, lies and other falsities to members of plaintiff's social and professional circles, as well as people on the Internet who plaintiff does not know.

159.     Lee knowingly lied, manipulated facts, and distorted reality when she made accusations of verbal, physical and sexual abuse against the plaintiff in various forums, including, but not limited to, Facebook, Craigslist, Instagram, Snapchat, LinkedIn and in other electronic communications and in-person gossip mongering.

160.     Most concerning was defendant's creation of a fake Craigslist posting soliciting visitors to exact revenge on plaintiff for raping a non-existent nine (9) year-old girl after grooming her through a personal Instagram account.

161.     Lee has also gone to great lengths to harass and intimidate plaintiff, including but not limited to, trespassing into plaintiff's secure residential building with the intention of vandalizing plaintiff's vehicle parked in a private garage, which she did.

162.     Defendant has also called and texted plaintiff on countless occasions, at all hours of the day and night, often from untraceable phone numbers.

163.     In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following illicit acts with the intention of causing plaintiff extreme emotional distress:

   (a)     Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

   (b)     Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

   (c)     Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

(d)     Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

(e)     Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

(f)     Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

(g)     Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

(h)     Exploited plaintiff's personal information and credit history in attempts to secure financing; and

(i)     Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

164.    The plaintiff harbors a reasonable fear for his own personal and physical safety, and the safety of those around him, given the defendant's unpredictable, volatile, and unexplainably vindictive behavior following a mere seven month dating relationship that simply did not work out.

165.    Defendant's conduct was so extreme, outrageous, methodical and pervasive that no person in plaintiff's shoes would be expected to endure it without suffering severely from the consequence of her actions.

166.    The defendant's conduct caused and will continue to cause the plaintiff to suffer severe emotional distress, humiliation, embarrassment and mental suffering, which he has. The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensatory damages, as well as exemplary damages in the amount of One Million Dollars ($1,000,000), for her willful and contumacious disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on plaintiff's

reputation as a respected and upstanding member of his community. Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

**COUNT VII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

167. Plaintiff incorporates the allegations of Paragraphs 1 through 89, as if fully restated in this Paragraph 168.

168. Since plaintiff's decision to part ways with defendant in September of 2017, Lee has engaged in a careless and/or reckless campaign to destroy plaintiff by spreading countless rumors, lies and other falsities to members of plaintiff's social and professional circles, as well as people on the Internet who plaintiff does not know.

169. Lee carelessly and/or recklessly lied, manipulated facts, and distorted reality when she made accusations of verbal, physical and sexual abuse against the plaintiff in various forums, including, but not limited to, Facebook, Craigslist, Instagram, Snapchat, LinkedIn and in other electronic communications and in-person gossip mongering.

170. Most concerning was defendant's creation of a fake Craigslist posting soliciting visitors to exact revenge on plaintiff for raping a non-existent nine (9) year-old girl after grooming her through a personal Instagram account.

171. Lee has also gone to great lengths to harass and intimidate plaintiff, including but not limited to, trespassing into plaintiff's secure residential building with the intention of vandalizing plaintiff's vehicle parked in a private garage, which she did.

172. Defendant has also called and texted plaintiff on countless occasions, at all hours of the day and night, often from untraceable phone numbers.

173.     In most cases Lee acted alone, but in some cases she acted in concert with others, to commit the following careless and/or negligent acts or omissions resulting in the plaintiff suffering extreme emotional distress:

(a)     Publicized false accusations that plaintiff was verbally and physically abusive to her, and that he was guilty of repeated sexual assault against defendant and potentially others;

(b)     Created imposter social media accounts to harass and intimidate plaintiff, and also as a platform to disseminate falsehoods about plaintiff;

(c)     Impersonated plaintiff on Facebook, Instagram, LinkedIn, Snapchat and certain male-seeking-male dating sites using his likeness and personal, traceable information;

(d)     Initiated contact under false pretenses with plaintiff's family members, friends, business contacts and other affiliates;

(e)     Widely disseminated embarrassing, sexually explicit photos depicting plaintiff without his consent;

(f)     Interfered with plaintiff's existing and prospective business relationships with the intent of impacting his livelihood and destroying his professional reputation;

(g)     Offered a financial reward to solicit Craigslist visitors to seek retribution against plaintiff for raping defendant's non-existent nine (9) year-old daughter;

(h)     Exploited plaintiff's personal information and credit history in attempts to secure financing; and

(i)     Used extortion tactics to coerce plaintiff into paying a ransom before agreeing to cease further acts of harassment and fraud.

174.     The plaintiff harbors a reasonable fear for his own personal and physical safety, and the safety of those around him, given the defendant's unpredictable, volatile, and unexplainably vindictive behavior following a mere seven month dating relationship that simply did not work out.

175.     Defendant's conduct was so extreme, outrageous, methodical and pervasive that no person in plaintiff's shoes would be expected to endure it without suffering severely from the consequence of her actions.

176.    The defendant's conduct caused and will continue to cause the plaintiff to suffer severe emotional distress, humiliation, embarrassment and mental suffering, which he has.  The plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

**WHEREFORE**, the plaintiff, JOHN DOE, prays that a judgment be entered against the defendant, JESSICA JIAHUI LEE, in an amount fair and just, but no less than Five Hundred Thousand Dollars ($500,000) in compensable damages for her careless, negligent and otherwise reckless disregard for the plaintiff's emotional and physical well-being, and the foreseeable impact her conduct might have on plaintiff's reputation as a respected and upstanding member of his community.  Plaintiff further requests that defendant be enjoined from any future, similar conduct, and that she be ordered to remove any existing, offending social media profiles or posts. Plaintiff seeks all other relief this Court deems appropriate and just under the circumstances.

### PLAINTIFF DEMANDS TRIAL BY JURY

**Dated: February 15, 2018**

**Respectfully submitted,**
**Attorneys for Plaintiff, John Doe**

By:    /s/ Ryan B. Jacobson
Ryan B. Jacobson, Esq (IL Bar No. 6269994)
Max B. Goodman, Esq (IL Bar No. 6312919)
SMITHAMUNDSEN LLC
150 North Michigan Avenue, Suite #3300
Chicago, Illinois 60601
Telephone: (312) 894-3252
Facsimile: (312) 997-1780
rjacobson@salawus.com
mgoodman@salawus.com