# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 18 C 1193 |
| JESSICA JIAHUI LEE | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff John Doe ("Plaintiff"), an Illinois citizen, initiated this lawsuit against Jessica Jiahui Lee ("Lee"), a Texas citizen, alleging that Lee "engaged in a deliberate campaign to destroy Plaintiff" by spreading rumors and lies about Plaintiff to his social and professional circles as well as the general public online. Plaintiff also alleges that Lee vandalized his car in Illinois. Now before the Court is Lee's motion to transfer venue pursuant to 28 U.S.C. §§ 1404 or 1046. For the following reasons, the Court denies Lee's motion.

## BACKGROUND

The factual allegations in Plaintiff's Complaint are both numerous and distressing. For purposes of this motion, the Court recites an abridged version of the facts.

Plaintiff is a 45-year-old technology professional employed as a Senior Director at a consulting firm. Lee is a 19-year-old part-time exotic dancer and, according to Plaintiff, a "professional sugar baby" who enters into relationships with affluent men in exchange for gifts, travel, and a life of luxury. Plaintiff met Lee in or around early February 2017 while traveling to Las Vegas, Nevada for business. The two commenced a "casual dating relationship" in March 2017, which lasted for approximately seven months. Following their break-up, Lee allegedly turned sour and started behaving erratically.

Starting in October 2017, Lee incessantly called and sent Plaintiff text messages at all hours of the evening. When Plaintiff ignored her calls and texts, Lee allegedly falsely accused Plaintiff of rape and abuse, both verbal and physical. She sent messages to that effect to Plaintiff's estranged wife while they were in the midst of divorce proceedings. Lee also posted a message on her Instagram account, which has over 30,000 followers, alluding to an abusive relationship with a man who was "going through a divorce" and who "selfishly took [Lee's] body" despite her hesitation. Though Lee did not identify Plaintiff in the post, one of the comments identified Plaintiff by name. On October 22, 2017, Lee created a Craigslist advertisement titled "FIND THE MAN WHO RAPED MY 9 YEAR OLD DAUGHTER," in which she falsely accused Plaintiff of raping her non-existent daughter and included Plaintiff's Instragram handle and cell phone number.

In the midst of Lee's crusade against Plaintiff, she sent several signals that she was purposefully acting to destroy Plaintiff's reputation. In a text message to Plaintiff, Lee stated:

> …you ruined your own life [Plaintiff]. I gave you fair warning what would happen if you disrespected me and threw me away.

In a similar tone, Lee posted a photograph of herself on her Instagram with a caption that read: "I don't get angry. I get even" with the hashtags #illruinyourlife, #becareful, and #dontmakememad.

Lee also created multiple fake accounts in Plaintiff's name across various social media and dating platforms in October and November 2017. For example, she created fake Instagram accounts, where she posted nude photos of Plaintiff and wrote "I am a rapist and cheater!!!!" and two Facebook profiles impersonating Plaintiff and contacting people in his network. She also signed Plaintiff up for dating applications such as OkCupid and Tinder in the male-seeking-male category. As a result, Plaintiff received countless phone calls and texts, some with risqué photographs of male genitalia. Lee created multiple fake LinkedIn accounts, connecting with people in Plaintiff's social and professional network. In one particular account, Lee wrote the following message beneath Plaintiff's name:

> I hate working for [employer omitted]!! I also hate my clients!!!! I am also very drunk.

She also posted a lengthy, damaging message in which "Plaintiff" seemingly wrote that he hated his job and his clients, and that he sent inappropriate photographs to his clients.

Plaintiff was called into the Human Resources Department at his workplace shortly after this message. Plaintiff was vigilant in discovering and reporting the fake accounts, but as soon as one shut down, another one instantly popped up.

In mid-to-late-November, Lee apparently had a change of heart, calling for a "truce" with Plaintiff, promising that she would "never do another thing to try and 'get back'" at Plaintiff. In a follow-up text message, Lee claimed that she was hacked and attributed her behavior to "blackouts and memory losses." Upon discovering that Plaintiff filed a petition for order of protection against her, Lee sent a three-page text including the following language:

> We live literally states apart. We'll never see each other again. So please just drop it and save yourself some money and time.
>
> I'm truly sorry for every embarrassment I've caused you. It was all my fault, everything was my fault, I'll take the blame, all I want is for you to drop this.

Later that same morning, however, Plaintiff was informed by his building's management office that his car had been vandalized. Lee was captured on video footage entering Plaintiff's building the night before behind an unsuspecting resident. She then rode the elevator to the parking garage where she found Plaintiff's car and punctured three tires, scratched all four quarter panels of the vehicle, super glued the locks, and spray-painted swastikas on several panels of the car.

Plaintiff retained legal counsel, and on December 8, 2017, his attorney sent a formal notice to Lee. The letter informed Lee of Plaintiff's intentions to pursue legal

4

action against her.  It also directed her to refrain from making future defamatory remarks and to remove any social media profiles, communications, or posts authored by Lee concerning the Plaintiff.

Still, after an order of protection and notice of impending lawsuit, Lee was relentless in her actions.  She continued texting and calling Plaintiff, oftentimes from private and/or untraceable numbers.  She continued to harass Plaintiff with inappropriate photographs and messages into February 2018, when Plaintiff brought this lawsuit.

On February 15, 2018, Plaintiff filed his seven-count Complaint, alleging the following causes of action: Count I,  Defamation *Per Se*; Count II, False Light Invasion of Privacy; Count III, Public Disclosure of Private Facts; Count IV, Tortious Interference with Business Expectancy; Count V, Vandalism/Damage to Property; Count VI, Intentional Infliction of Emotional Distress; and Count VII, Negligent Infliction of Emotional Distress.

## **DISCUSSION**

Lee urges the Court to transfer the case to the Eastern District of Texas on two grounds: (1) venue is improper pursuant to § 1406(a); and (2) the convenience of parties and witnesses and the interests of justice strongly favor a transfer under § 1404.[1]  The Court analyzes each accordingly.

---

[1] Lee originally filed a motion to dismiss or, in the alternative, a motion to transfer venue.  The Court denied Lee's motion to dismiss during the June 7, 2018 motion hearing.

## A. Motion to Transfer for Improper Venue

Under 28 U.S.C.A § 1406(a), when a case is filed in the wrong district or division, the court shall dismiss or transfer the case to any district or division in which it could have been brought. For venue purposes, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiff contends that venue is proper under the second prong because the harm giving rise to the defamation-related claims occurred in Plaintiff's home state of Illinois. More directly, the vandalism also occurred in Illinois. Lee counters that the venue analysis focuses on where the defendant's actions occurred (which is largely in Texas), and not where the plaintiff suffered harm. *See Moran Indus., Inc. v. Higdon*, 2008 WL 4874114, at *5 (N.D. Ill. 2008).

It is irrefutable that the vandalism of Plaintiff's car in Illinois, though egregious, is just one of the numerous allegations against Lee in Plaintiff's Complaint and is not, alone, sufficient to support venue in Illinois. The bulk of Plaintiff's Complaint relates to Lee's alleged wrongful conduct with respect to making defamatory statements, invading Plaintiff's privacy, and engaging in a campaign to destroy Plaintiff's

reputation. The Court accordingly considers whether the actions giving rise to Plaintiff's defamation-related claims substantially occurred in Illinois.

Venue is proper in the Northern District of Illinois because the events giving rise to Plaintiff's defamation claim, *i.e.*, the reputational harm suffered, occurred in Illinois. "The principal injury giving rise to a defamation claim occurs where [Plaintiff's] reputation would suffer the most harm—where [he] lives and works and where the people with whom [he] has personal or commercial relationships reside." *Basile v. Prometheus Global Media, LLC*, 2016 WL 2987004, at *5 (N.D. Ill. 2016) (citing *Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009)). That Lee acted from Texas when she allegedly posted defamatory statements and salacious content regarding Plaintiff is irrelevant. Plaintiff's reputational harm gives rise to his defamation claims against Lee. This harm occurred substantially in Illinois, where Plaintiff resides, works, and has many professional and social contacts.

Lee contends that Plaintiff's supportive authorities are distinguishable and uninstructive to the case at bar because they involved defamatory statements made in Illinois or publications printed in Illinois. *See Basile*, 2016 WL 2897004, at *5 (defamatory statements distributed in printed magazines in Illinois); *Kamelgard*, 585 F.3d at 339 (defamatory statement made in Illinois); *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Assoc., Inc.*, 525 F. Supp. 2d 1039, 1043–44 (N.D. Ill. 2007) (defamatory

statements made in newsletters sent to Illinois residents).[2] But neither of these cases hold that the defamatory statements must be made in Illinois to determine that the relevant action occurred substantially in Illinois.

In *Basile v. Prometheus Global Media, LLC*, the court based its decision on the fact that the plaintiff "felt the sting of the defamatory statements" in Illinois because she lived here, unsuccessfully attempted to find work here, and had close relationships with people living here. 2016 WL 2897004, at *5. That the defamatory statements were distributed directly to Illinois via printed magazines and other media was an additional factor that only made the case stronger for the plaintiff.

Assuming Lee's argument stands, however, the Complaint alleges that she, too, distributed defamatory statements to Illinois. Plaintiff alleges that Lee created multiple imposter LinkedIn profiles, taking care to accurately reflect Plaintiff's work experience so as to mislead other members into believing they were legitimate. She then connected with Plaintiff's clients, co-workers, superiors, family, and friends, and posted flagrant statements seemingly coming from Plaintiff's mouth. The defamatory statements Lee posted while she was physically sitting in Texas reached Illinois as she specifically targeted members of Plaintiff's personal and professional networks, presumably largely living in Illinois, to receive and read those statements. In fact, all of Lee's online

---

[2] Lee also challenges Plaintiff's reliance on *Board of Forensic Document Examiners, Inc v. American Bar Association*, 287 F. Supp. 3d 726, 732 (N.D. Ill. 2018), because it involved a choice-of-law analysis using the most significant relationship test, which is inapplicable to the venue question before the Court. We agree with Lee and accordingly disregard Plaintiff's citation to that case.

actions, though originating within the confines of Texas, transcended the physical boundaries of the state the moment they were transmitted publicly on the largest forum for instantaneous and widespread communication.

In conclusion, venue is proper in the Northern District of Illinois because the events giving rise to Plaintiff's defamation claim, *i.e.*, the reputational harm caused by Lee's actions, occurred in Illinois.

### B. Motion to Transfer Venue For Convenience or In the Interests of Justice

Lee next requests the Court to transfer the case to the Eastern District of Texas pursuant to 28 U.S.C.A. § 1404, which states in relevant part:

> For the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought…

Lee notes that she, along with her alleged "co-conspirators," reside in Texas. She insists that keeping the case in the Northern District of Illinois would prove burdensome, if not dispositive, as she lacks the resources to properly litigate the case in a foreign state.

Courts consider two sets of interests in evaluating whether to transfer the case to another district: private and public. *Basile*, 2016 WL 2897004, at *5. Private interests include the convenience of the parties, availability and access to witnesses, the location of material events, and the relative ease of access to sources of proof. *Id.* Public interests include the congestion of the respective dockets, each court's familiarity with the relevant law, the desirability of resolving controversies in each location, and the relationship of the community to the controversy. *Id.*

There is a strong presumption in favor of the plaintiff's choice of forum if, as here, it is where the plaintiff resides. *Basile*, 2016 WL 2987004, at *5. Lee has the burden of showing that the transferee forum is "clearly more convenient." *Id*. In doing so, Lee must "demonstrate that the balance of the factors weigh heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Judge v. Unigroup, Inc.*, 2017 WL 345561, at *2 (N.D. Ill. 2017). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

While Lee raises acceptable arguments with respect to the private interests, she has not demonstrated that litigating in the Eastern District of Texas is clearly more convenient. The ease of access to sources of proof is a non-issue in our modern age of electronic documentation and transmission, especially in a case mainly involving online content. The Court acknowledges that Lee and her alleged co-conspirators are residents of Texas who might be called in to testify at trial or might be joined in litigation.[3] It is also inherently inconvenient for any defendant to defend a case in a foreign state. On the other hand, Plaintiff notes that he and members of his personal and professional circles in Illinois will be the critical witnesses for his defamation-related claims.

---

[3] Lee insists that Plaintiff intends on joining additional defendants who reside in Texas and have no alleged connection to Illinois. Plaintiff does make reference to co-conspirators throughout his Complaint, but he notes that "they have not been included in this iteration of the lawsuit and may be added later." As they are not subject to the Complaint at this time, the Court need not consider whether they will be inconvenienced as parties to this case nor whether the Court would have jurisdiction over them.

In evaluating the convenience of the witnesses, the Court "should look to the nature and quality of the witnesses' testimony with respect to the issues in the case." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995). In a defamation case, those who heard or received the defamatory statements are just as important, if not more important, as those who made the statements. Here, the alleged actors are predominantly in Texas, while the significant receivers of those statements, *i.e.*, Plaintiff's social and professional network, almost entirely live in Illinois. Witnesses related to the vandalism claim are also in Illinois. The Court recognizes that certain witnesses will be inconvenienced by having to testify in Illinois. Overall, however, the convenience of the parties and witnesses is balanced, and only slightly favoring transfer.

Furthermore, as discussed above, the material events giving rise to Plaintiff's defamation claim occurred in Illinois. *See Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017) (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) ("The tort of defamation would therefore occur in the state or states in which the victim loses personal or as here professional transactions or transactional opportunities because of the impairment of his reputation brought about by the defamatory statement.")). Although Lee posted the defamatory content online from Texas, the consequences of her actions, the personal or professional harm suffered by Plaintiff, "occurred primarily, if not exclusively, in Illinois." *Id*. This factor weighs heavily against transfer.

Lee also fails to establish that the public interests clearly favor a venue transfer. The only factor in Lee's favor is the quicker resolution time in the Eastern District of Texas. While both districts have similar median times from filing to disposition short of trial (7.8 months in EDTX versus 8.1 months in NDIL), it takes relatively longer for a case to go to trial in the Northern District of Illinois (20.2 months in EDTX versus 34.0 months in NDIL). This factor favors transfer.

The remaining factors, however, do not strongly favor transfer. Both parties agree that Illinois law governs Plaintiff's defamation claim, and the Northern District of Illinois is more familiar with Illinois law. At the very least, the Court cosigns with Lee's view that this factor is neutral as Plaintiff's defamation claims are not terribly complex. More significantly, however, Illinois "has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state." *Campbell*, 262 F. Supp. 3d at 712. While Texas may have an interest in preventing its citizens from posting malicious information online like Lee did, Illinois has a stronger interest in "providing the plaintiff with the opportunity to vindicate her reputation in the location in which it was damaged." *Id.* Likewise, the relationship to each community factor is neutral at most, if not stronger in Illinois for the same reasons.

"As a general rule, a plaintiff's choice of forum should be disturbed only if the balance of the public and private interest factors strongly favors the defendant." *Gehrett v. Lexus*, 2012 WL 3644008, at * 2 (N.D. Ill. 2012). As a whole, the private and public

interests offered by Lee do not tip the scales in favor of transfer to the Eastern District of Texas. We therefore decline to transfer the case; it will remain in the Northern District of Illinois.

## **CONCLUSION**

For the aforementioned reasons, Lee's motion to transfer venue is denied. It is so ordered.

Dated: 1/17/2019

_____
Charles P. Kocoras
United States District Judge